**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

WILLIE J. BLAND,

Petitioner,

v.

WARDEN C. CARTER,

Respondent.

Civil Action No. 24-0003-TDC

## MEMORANDUM OPINION

Self-represented Petitioner Willie J. Bland, who is currently confined at the Federal Correctional Institution–Cumberland ("FCI–Cumberland") in Cumberland, Maryland, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 in which he challenges a loss of good conduct credits as a result of a disciplinary action. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* Rules 1(b), 8(a), Rules Governing Section 2254 Cases in the United States District Courts; D. Md. Local R. 105.6. For the reasons set forth below, the Petition will be DISMISSED.

## BACKGROUND

In the Petition, Bland asserts a violation of his due process rights under the Fifth Amendment to the United States Constitution arising from two disciplinary actions that resulted in the loss of good conduct time ("GCT").

On August 4, 2016, Bland began to serve a 33-month term of imprisonment imposed following his federal convictions for possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and possession with intent to distribute a controlled substance, in violation of 21

U.S.C. § 841(a) ("the first sentence"). From May 3, 2017 to March 9, 2018, Bland was designated to serve the first sentence at Hope Village, a halfway house then under contract with the Federal Bureau of Prisons ("BOP"). On June 19, 2017, while at Hope Village, Bland was charged with escape in Incident Report No. 3063210. On June 22, 2017, after a hearing, he was sanctioned with the loss of 27 days of GCT and the loss of certain privileges. On July 9, 2017, Bland was again charged with escape, in Incident Report No. 3063211. On July 11, 2017, after a hearing, he was sanctioned with the loss of another 27 days of GCT and the loss of privileges.

On March 9, 2018, after the application of 80 days of GCT, Bland was released from this term of imprisonment. From March 9, 2018 to June 22, 2022, Bland remained on supervised release in the community.

During Bland's service of the first sentence, from August 20, 2016 to March 9, 2018, he did not file any administrative grievances, known as administrative remedy requests ("ARRs") pursuant to the BOP's administrative remedy program.

On July 5, 2022, Bland began to serve a 96-month total term of imprisonment at FCI-Cumberland for conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846, and distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)C) ("the second sentence"). Bland's projected release date, assuming application of GCT, is March 16, 2027. During his service of the second sentence, Bland has filed ARRs, one each relating to the two incident reports issued while he was at Hope Village serving the first sentence. On October 30, 2023, the BOP Mid-Atlantic Regional Office received these ARRs, No. 1179786-R1 and No. 1179787-R1, relating to Incident Report Nos. 3063210 and 3063211, respectively. Both grievances were denied the same day.

Bland asserts that following his 2017 disciplinary hearing that resulted in the loss of GCT, he never received a copy of the report of decision issued by the disciplinary hearing officer ("DHO"), and that his ARRs were rejected because he did not have that report. However, the Administrative Remedy Rejection Notices issued by the Mid-Atlantic Regional Office on October 31, 2023 state that the appeals were denied as untimely because they were not filed within 20 days of the Warden's response or the receipt of the DHO's report. In his Reply, Bland asserts that he did not appeal the dismissal from the Regional Office "because such exhaustion was fruitless without having [the] DHO report attached to the appeal, per [BOP] policy. 28 C.F.R. 542.15(a)." Reply at 2, ECF No. 14.

As relief, Bland seeks the restoration of 54 days of GCT.

**DISCUSSION**

In the Petition, Bland asserts that the failure to provide him with the DHO's written decision following his disciplinary proceedings violated his right to due process of law under the Fifth Amendment because he had no ability to appeal the DHO's decision without a copy of that report. Respondent contends that the Petition must be dismissed because Bland failed to exhaust administrative remedies, his claim is barred by the doctrine of laches, and his revoked GCT arising from a completed sentence cannot be retroactively applied to that sentence or applied to his present sentence.

**I. Due Process**

Under the Fifth Amendment, certain due process protections are required when an inmate faces the loss of a liberty interest, such as the possible loss or diminution of good conduct credits. See *Wolff v. McDonnell*, 418 U.S. 539, 563–66 (1974); *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). These steps include (1) advance written notice of the charges

of at least 24 hours; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing at which the prisoner has the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decisionmaker. *See Wolff*, 418 U.S. at 564–66, 570–71. If these procedural protections are provided, due process will be satisfied if "there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Hill*, 472 U.S. at 455 (quoting *United States ex rel. Vajtauer v. Comm'r of Immigr.*, 273 U.S. 103, 106 (1927)).

## II. Exhaustion of Administrative Remedies

Respondent asserts that the Petition should be dismissed because Bland failed to exhaust administrative remedies. "Prior to hearing a § 2241 petition, federal courts require exhaustion of alternative remedies, including administrative appeals." *Rodriguez v. Ratledge*, 715 F. App'x 261, 265 (4th Cir. 2017) (citing *Timms v. Johns*, 627 F.3d 525, 531 (4th Cir. 2010)). "The exhaustion requirement is a prudential restraint, not a statutory requirement." *Id.* (citing *Dragenice v. Ridge*, 389 F.3d 92, 98 (4th Cir. 2004)). "Failure to exhaust administrative remedies typically results in dismissal without prejudice, in order to allow the refiling of an action once the administrative process is complete." *Id.*; *see also McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004) ("Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions.").

Exhaustion requires that prisoners pursue a claim through all available stages in the administrative process until they receive a final denial of the claim. *See Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming the dismissal of a prisoner's claim for failure to exhaust administrative remedies because the prisoner "never sought intermediate or final administrative

review after the prison authority denied relief"); *Gibbs v. Bureau of Prison Office*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust administrative remedies where the plaintiff did not appeal his administrative claim through all four stages of the BOP grievance process); *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003).

The BOP has established an Administrative Remedy Program, 28 C.F.R. § 542.10–542.19 (2025), for inmates to resolve complaints related to their confinement. This process consists of the following steps: (1) the inmate is first required to present the issue informally to staff, pursuant to procedures to be established by the Warden of the prison; (2) if the inmate is unable to resolve the issue informally, the inmate must file a written ARR with the Warden within 20 days of the date of the incident in question; (3) if the Warden's response is unsatisfactory, the inmate must file an appeal to the BOP Regional Office within 20 days of the Warden's response; and (4) if the inmate is still not satisfied, the inmate must file an appeal to the BOP Central Office within 30 days of the date of the BOP Regional Office's response. *Id.* §§ 542.13–542.15. When seeking a review of a DHO decision, such an appeal is directly submitted in the first instance to the BOP Regional Office. *Id.* § 542.14(d)(2).

BOP records demonstrate that during the first sentence, during which the GCT sanctions were imposed in July 2017, Bland did not file any ARRs at any point prior to his release on March 9, 2018. Bland did not file an ARR relating to the disciplinary hearing and the July 2017 GCT sanctions until October 30, 2023, over six years after the DHO's decision, during the separate second sentence. Because an initial ARR must be filed within 20 days of the incident in question, these ARRs were properly deemed to be untimely by the Mid-Atlantic Regional Office. *See* 28 C.F.R. § 542.14 (requiring the inmate to file a formal complaint within 20 days of the date on which the basis of the complaint occurred). Further, Bland did not appeal those determinations to

the Central Office, as required. Accordingly, the record reflects that Bland did not exhaust administrative remedies.

Bland offers no explanation for the failure to file a timely ARR other than his apparent belief that he could not do so without having received the DHO's written decision. Although Respondents do not dispute that Bland did not receive that decision, Bland has not demonstrated that the administrative process was unavailable to him without that document. Exhaustion of administrative remedies can be excused if the administrative process is unavailable, which occurs in rare circumstances when that process "operates as a simple dead end," when it is "so opaque that it becomes, practically speaking, incapable of use," or when "prison administrators thwart inmates from taking advantage of [it] through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 642–44 (2016).

None of these circumstances existed here. First, Bland, in fact, later filed ARRs relating to the DHO's decision during the second sentence, in 2023. Second, although Bland asserts that his ARRs were denied "on all levels" because he did not have a copy of the DHO decision, Pet. at 5, ECF No. 1, the Regional Office actually denied his appeals as untimely, not based on failure to submit the DHO report, as reflected in its notice to Bland stating that the appeals were denied because an appeal to the Regional Office "must be received within 20 days" of the Warden's response or "receipt of the DHO report." ARR Rejection Notices at 1–2, Pet. Ex. 2, ECF No. 1-2. Thus, Bland could have filed an ARR and then an appeal within 20 days of the Warden's denial. *See id.* Third, Bland has acknowledged that he did not file an appeal of the Regional Office's decision to the Central Office but has provided no basis to conclude that an appeal to the Central Office could not succeed unless he submitted the DHO decision with his appeal.

Finally, to the extent that the failure to provide Bland with the DHO decision hindered his ability to file an ARR, Bland could have sought an extension of time to file his administrative remedy until he received it. *See* 28 C.F.R. § 542.14(b) (stating that "an extension in filing time may be allowed" where the inmate "demonstrates a valid reason for delay," such as "a situation which prevented the inmate from submitting the administrative remedy request within the established time frame"). Where he made no such request for approximately six years, Bland has not shown that the Administrative Remedy Program was entirely unavailable to him on this basis.

For these reasons, the Court finds that Bland's petition is subject to dismissal based on the failure to exhaust administrative remedies.

## III. Restoration of GCT

Even if the Court were to excuse Bland's failure to exhaust administrative remedies, he would not be entitled to the relief sought because he is no longer serving the term of imprisonment during which he lost the GCT. Bland appears to argue that if his GCT are restored, they should be applied to reduce the sentence he is presently serving.

At the time of the service of the first sentence, GCT was applied as follows:

> Subject to paragraph (2), a prisoner who is serving a term of imprisonment of more than 1 year . . . may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. Subject to paragraph (2), if the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate. . . . Credit that has not been earned may not later be granted. Subject to paragraph (2), credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

> (2) Notwithstanding any other law, credit awarded under this subsection after the date of enactment of the Prison Litigation Reform Act shall vest on the date the prisoner is released from custody.

18 U.S.C. § 3624 (2012).

Consistent with this provision, when a prisoner is released from a term of imprisonment onto supervised release or parole "the good time earned during that period of imprisonment is of no further effect either to shorten the period of supervision or to shorten the period of imprisonment which the offender may be required to serve for violation of parole or mandatory release." 28 C.F.R. § 2.35(b). Thus, numerous federal courts have concluded that restored GCT arising under a completed sentence may not be applied to new sentence, either for a violation of parole or supervised release, or for a different crime. *See Boniface v. Carlson*, 881 F.2d 669, 671–72 (9th Cir. 1989) ("The courts have uniformly . . . held that good time, both statutory and extra or industrial good time, earned during the original incarceration does not survive a parole release and cannot be credited upon a parole violator's sentence."); *Bailey v. Southerland*, 821 F.2d 277, 278–79 (5th Cir. 1987) ("[T]he good time of one confinement does not carry over to a second confinement."); *Wilson v. Andrews*, No. 20-CV-470 (RDA/MSN), 2020 WL 5891457, at *6 (E.D. Va. Oct. 5, 2020) (holding that if there were a determination that a defendant was entitled to additional GCT that he did not receive, the credits "could not be used either the shorten the period of supervised release or to shorten the period of any future imprisonment . . . for violating the conditions of his release"); *Schmitz v. Scibana*, No. 04–C–414–C, 2004 WL 1563302, at *1 (W.D. Wis. July 9, 2004) (rejecting a challenge to a GCT calculation on an already completed sentence where the defendant had begun to serve a new sentence, based on the conclusion that the court was not allowed to "treat the two sentences as one or order the [BOP] to remedy a past erroneous calculation by making up the difference on a new sentence"); *see also Turnage v. U.S. Parole*

*Comm'n*, No. ELH-11-3373, 2014 WL 1340071, at *4–5 (D. Md. Apr. 2, 2014) (in assessing when a federal sentence expired, holding that once a prisoner has been paroled "good time credits have no further function"), *aff'd*, 583 F. App'x 245 (4th Cir. 2014). For example, in *Bailey*, the United States Court of Appeals for the Fifth Circuit held that when a prisoner challenged a disciplinary determination that resulted in a forfeiture of GCT, once he was released on that sentence, the GCT, even if restored could not be applied to a subsequent sentence for a violation of supervised release, such that the petition was moot. *Bailey*, 821 F.2d at 278–79.

Based on the statutory framework underlying GCT and the text of the applicable regulation, the Court agrees with this line of case law and finds that any restored GCT, which would have been earned in relation to the first sentence, which was completed on March 9, 2018, could not be applied to Bland's current sentence, which began on July 5, 2022. Bland's requested relief in the form of restored GCT credits is therefore unavailable, and the Petition is subject to dismissal as moot.

Thus, based both on the failure to exhaust administrative remedies and the present unavailability of the relief sought, the Petition must be dismissed. The Court therefore need not and does not address Respondent's additional argument for dismissal.

**CONCLUSION**

For the foregoing reasons, Bland's Petition for a Writ of Habeas Corpus will be DISMISSED. A separate Order shall be issued.

Date: September 1, 2026

THEODORE D. CHUANG
United States District Judge